JM:RB
F.#2010R00826

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

KENNETH MARSH,
    also known as "Ken Maseka"
    and "Michael Warren,"
BALDWIN ANDERSON,
RICHARD BORRELLO,
    also known as "Richard Lanza"
    and "Rich Lanza,"
ROBERT ANTHONY BUDION,
    also known as "Robert Anthony,"
JOHN DEGLIUOMINI,
    also known as "John Stevens,"
JEANNE LADA,
    also known as "Jeanne Grecco,"
JAMES T. LEVIER,
    also known as "J.T.,"
CHRISTOPHER PERROTTA,
    also known as "Chris Gaines,"
GREGORY ROSSOMANDO,
    also known as "Greg Lehman,"
MICHAEL SCARPACI,
    also known as "Michael Stern,"
ROBERT SEIDOR,
    also known as "Robert Vincent,"
DOMINIC SPINELLI,
    also known as "John Gage,"
PAUL STOKES,
    also known as "Paul Ross," and
WILLIAM VECCHIONE,
    also known as "William Lanza"
    and "Bill Lanza,"

        Defendants.

- - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No._____
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 1348,
1349, 2 and 3551 et
seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

I.   Background

1.   Gryphon Holdings Inc., which also did business under the name Gryphon Financial (hereinafter, collectively, "Gryphon"), was a Staten Island-based company that provided customers with investment advisory services.  The defendant KENNETH MARSH, also known as "Ken Maseka" and "Michael Warren," together with others, owned Gryphon and supervised its operations, including all aspects of the fraudulent scheme described herein.

2.   The defendants BALDWIN ANDERSON, RICHARD BORRELLO, also known as "Richard Lanza" and "Rich Lanza," ROBERT ANTHONY BUDION, also known as "Robert Anthony," JOHN DEGLIUOMINI, also known as "John Stevens," JEANNE LADA, also known as "Jeanne Grecco," JAMES T. LEVIER, also known as "J.T.," CHRISTOPHER PERROTTA, also known as "Chris Gaines," GREGORY ROSSOMANDO, also known as "Greg Lehman," MICHAEL SCARPACI, also known as "Michael Stern," ROBERT SEIDOR, also known as "Robert Vincent," DOMINIC SPINELLI, also known as "John Gage," PAUL STOKES, also known as "Paul Ross," and WILLIAM VECCHIONE, also known as "William Lanza" and "Bill Lanza" worked as sales representatives at Gryphon.  In

2

addition to supervising the defendant sales representatives, the
defendant KENNETH MARSH also performed that job, as described
herein.

        3.    From in or about January 2007 to April 2010, the
defendants offered Gryphon's customers subscriptions to
"investment newsletters" in which Gryphon provided customers with
specific trade recommendations.  These subscriptions ranged in
price from $99 to $1,000,000.  As part of the subscriptions,
customers also received direct telephone access to the
defendants.

        4.    In addition to the investment newsletter
subscriptions, the defendants also sold customers advice
regarding individual stocks and options or groups of stocks and
options.  These recommendations ranged in price from $1,000 to
$50,000.

        5.    The defendants also frequently provided customers
with investment advice that was supposedly tailored to the
customers' individual circumstances.  In some instances, the
defendant KENNETH MARSH and other defendants directly managed
customers' investment accounts or money.

        6.    The defendants' trading recommendations frequently
involved securities of issuers with a class of securities
registered under section 12 of the Securities Exchange Act of

1934.

7.   Gryphon maintained a sophisticated website and
paid for banner advertisements on other websites that directed
customers to Gryphon's site.  The Gryphon site encouraged
potential customers to provide their contact information.
Gryphon also purchased "sales leads" from other companies which
contained the names and contact information of potential
customers.  After Gryphon acquired an individual's contact
information, that person received emails and telephone calls
promoting Gryphon's services.

II.   The Gryphon Scheme

8.   Throughout the course of the company's existence,
the defendants used high-pressure sales tactics and a wide range
of misrepresentations to convince potential customers to buy
Gryphon's fee-based services.  Once a customer purchased a
service, the defendants used the same tactics and
misrepresentations to sell the customers increasingly expensive
services.  Over the course of the scheme, the defendants and
others defrauded Gryphon's customers of more than $20 million
using these methods.

4

A.   Gryphon's Fake Trading Desk

9.   The defendants and Gryphon's promotional materials regularly referred to the company's trading desk and touted its traders' long experience and unparalleled expertise.   The defendants typically referred to themselves as traders in their conversations with customers, and informed customers that they made the same trades Gryphon recommended to its customers, which claim also appeared in the company's promotional materials.   In fact, Gryphon did not have a trading desk, and the defendants were not employed by Gryphon as traders.

B.   Gryphon's Fake Hedge Fund

10.   The defendants and Gryphon's promotional materials also regularly referred to the company's hedge fund.   For example, the website claimed that Gryphon's hedge fund began on January 1, 2007, contained holdings in excess of $1.4 billion, and that Gryphon itself was run by its hedge fund traders.   In fact, Gryphon did not operate a hedge fund.

C.   Gryphon's Fake Employees

11.   The defendants and Gryphon's promotional materials also touted the trading and investment prowess of Ken Maseka, who was purported to be, among other things, Gryphon's president, founding partner, owner and head trader.   The defendants described Maseka as a billionaire stock picker and trader who was

5

educated at Harvard and Oxford and who worked as an executive at Goldman Sachs.  The defendants regularly referred to Maseka in their conversations with customers, sold certain "premium" services that included personal access to Maseka, and told customers that they were speaking with Maseka.  In fact, Maseka did not exist.  The name was an alias employed by the defendant KENNETH MARSH, who was not a billionaire stock picker, did not attend Harvard or Oxford, and did not work at Goldman Sachs.

12.   The defendants and Gryphon's promotional materials also touted the trading and investment prowess of Michael Warren, who was purported to be, among other things, Gryphon's vice-president, partial owner, chief financial strategist, head of equity hedge fund strategies, and manager of the firm's offshore hedge fund and structured products division.  The defendants told Gryphon's customers that Warren was a graduate of Columbia University and the Wharton School of Business.  As with Ken Maseka, the defendants referred to Warren in conversations with customers, sold "premium" services that offered direct access to Warren, and told customers that they were speaking with Warren. In fact, Warren did not exist.  The name was another alias used by the defendant KENNETH MARSH, and the Warren life story, like the Maseka life story, was fictional.

6

13.   The defendants and Gryphon's promotional materials also touted the investment and trading prowess of a number of other fake employees, who also possessed detailed, false life stories.  Many of the defendants used such fake names and identities in their communications with customers.

D.   False Testimonials

14.   The defendants and Gryphon's promotional materials presented customers with false testimonials concerning Gryphon's trading prowess.  For example, Gryphon's promotional materials stated that the famous financier George Soros said, "Alone the traders of Gryphon Financial are incredible, together the[y] are unstoppable."

E.   False Addresses

15.   The defendants and Gryphon's promotional materials claimed that the firm operated from a Wall Street office.  In fact, Gryphon operated in a commercial space located in a strip mall on Staten Island and paid for the use of a "virtual address" on Wall Street.

16.   The defendants and Gryphon's promotional materials also claimed that the firm had working offices in Chicago, London, England and Sydney, Australia.  In fact, no Gryphon employees worked from such offices.

7

F.   <u>False History</u>

17.   The defendants and Gryphon's promotional materials also referred to the firm operating as of 1991, among other false dates.   In fact, the company first filed for status as a corporation in New York in March 2006.

G.   <u>Fake Research</u>

18.   The defendants routinely informed customers that the company's trade recommendations were the result of the work of scores of talented financial analysts and researchers who worked for Gryphon.   In fact, Gryphon did not employ such people.

H.   <u>False Sales Pitches</u>

19.   The defendants made false statements to Gryphon's customers to explain why their trading recommendations — which would only be disclosed if the customer bought the service being pitched — were poised to provide exceptional profits.   For example, the defendants routinely informed customers that Ken Maseka and Michael Warren were at that very moment meeting with powerful individuals concerning an upcoming transaction and that the last time these individuals met, Warren and Maseka came away with a trade position that produced staggering profits.

20.   The defendants employed a wide range of other misrepresentations to gain their customers' trust concerning their trading positions, ranging from fraudulent statements

8

concerning their past trading success to claims that the
defendant speaking to the customer had himself or herself had
placed large amounts of his or her own or a family member's money
behind a certain trade.

COUNT ONE
(Wire Fraud and Securities Fraud Conspiracy)

21.   The allegations contained in paragraphs 1 through
20 are repeated and incorporated as though fully set forth in
this paragraph.

22.   In or about and between January 2007 and April
2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
KENNETH MARSH, also known as "Ken Maseka" and "Michael Warren,"
BALDWIN ANDERSON, RICHARD BORRELLO, also known as "Richard Lanza"
and "Rich Lanza," ROBERT ANTHONY BUDION, also known as "Robert
Anthony," JOHN DEGLIUOMINI, also known as "John Stevens," JEANNE
LADA, also known as "Jeanne Grecco," JAMES T. LEVIER, also known
as "J.T.," CHRISTOPHER PERROTTA, also known as "Chris Gaines,"
GREGORY ROSSOMANDO, also known as "Greg Lehman," MICHAEL
SCARPACI, also known as "Michael Stern,"  ROBERT SEIDOR, also
known as "Robert Vincent," DOMINIC SPINELLI, also known as "John
Gage," PAUL STOKES, also known as "Paul Ross," and WILLIAM
VECCHIONE, also known as "William Lanza" and  "Bill Lanza," did
knowingly and intentionally conspire with each other and others

9

to: (a) devise a scheme and artifice to defraud Gryphon customers and to obtain money and property from Gryphon customers by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such a scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and (b) execute a scheme and artifice to defraud Gryphon customers in connection with securities of issuers with a class of securities registered under section 12 of the Securities Exchange Act of 1934, contrary to Title 18, United States Code, Section 1348.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Securities Fraud)

23.   The allegations contained in paragraphs 1 through 20 are repeated and incorporated as though fully set forth in this paragraph.

24.   In or about and between January 2007 and April 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants KENNETH MARSH, also known as "Ken Maseka" and "Michael Warren," BALDWIN ANDERSON, RICHARD BORRELLO, also known as "Richard Lanza" and "Rich Lanza," ROBERT ANTHONY BUDION, also known as "Robert

10

Anthony," JOHN DEGLIUOMINI, also known as "John Stevens," JEANNE
LADA, also known as "Jeanne Grecco," JAMES T. LEVIER, also known
as "J.T.," CHRISTOPHER PERROTTA, also known as "Chris Gaines,"
GREGORY ROSSOMANDO, also known as "Greg Lehman," MICHAEL
SCARPACI, also known as "Michael Stern,"  ROBERT SEIDOR, also
known as "Robert Vincent," DOMINIC SPINELLI, also known as "John
Gage," PAUL STOKES, also known as "Paul Ross," and WILLIAM
VECCHIONE, also known as "William Lanza" and "Bill Lanza,"
together with others, did knowingly and intentionally execute and
attempt to execute a scheme and artifice to defraud persons in
connection with securities of issuers with a class of securities
registered under section 12 of the Securities Exchange Act of
1934, contrary to Title 18, United States Code, Section 1348.

            (Title 18, United States Code, Sections 1348, 2 and
3551 et seq.)

                        COUNT THREE
              (Investment Advisor Fraud Conspiracy)

            25.  The allegations contained in paragraphs 1 through
20 are repeated and incorporated as though fully set forth in
this paragraph.

            26.  In or about and between January 2007 and April
2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
KENNETH MARSH, also known as "Ken Maseka" and "Michael Warren,"
BALDWIN ANDERSON, RICHARD BORRELLO, also known as "Richard Lanza"

                            11

and "Rich Lanza," ROBERT ANTHONY BUDION, also known as "Robert Anthony," JOHN DEGLIUOMINI, also known as "John Stevens," JEANNE LADA, also known as "Jeanne Grecco," JAMES T. LEVIER, also known as "J.T.," CHRISTOPHER PERROTTA, also known as "Chris Gaines," GREGORY ROSSOMANDO, also known as "Greg Lehman," MICHAEL SCARPACI, also known as "Michael Stern," ROBERT SEIDOR, also known as "Robert Vincent," DOMINIC SPINELLI, also known as "John Gage," PAUL STOKES, also known as "Paul Ross," and WILLIAM VECCHIONE, also known as "William Lanza" and "Bill Lanza," did knowingly and willfully conspire with each other and others to use the mails and means and instrumentalities of interstate commerce, directly and indirectly, to employ a device, scheme and artifice to defraud clients and prospective clients, contrary to Title 15, United States Code, Sections 80b-2(11), 80b-6 and 80b-17.

27. In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants KENNETH MARSH, also known as "Ken Maseka" and "Michael Warren," BALDWIN ANDERSON, RICHARD BORRELLO, also known as "Richard Lanza" and "Rich Lanza," ROBERT ANTHONY BUDION, also known as "Robert Anthony," JOHN DEGLIUOMINI, also known as "John Stevens," JEANNE LADA, also known as "Jeanne Grecco," JAMES T. LEVIER, also known as "J.T.," CHRISTOPHER PERROTTA, also known as "Chris Gaines," GREGORY ROSSOMANDO, also known as "Greg Lehman," MICHAEL SCARPACI, also

12

known as "Michael Stern," ROBERT SEIDOR, also known as "Robert
Vincent," DOMINIC SPINELLI, also known as "John Gage," PAUL
STOKES, also known as "Paul Ross," and WILLIAM VECCHIONE, also
known as "William Lanza" and "Bill Lanza," together with others,
committed and caused to be committed, among others, the
following:

OVERT ACTS

a. On or about July 25, 2007, the defendant
BALDWIN ANDERSON sent an email concerning Gryphon's services to
Customer #1, an individual whose identity is known to the Grand
Jury.

b. In or about December 2008, the defendant
ROBERT ANTHONY BUDION spoke on the telephone with Customer #2, an
individual whose identity is known to the Grand Jury, and told
him that BUDION was a gifted options trader.

c. In or about and between January 2007 and
April 2010, the defendant JEANNE LADA drafted text concerning
Gryphon's services that appeared on the Gryphon website.

d. On or about January 6, 2010, the defendant
JAMES T. LEVIER spoke on the telephone concerning Gryphon's
services with Customer #3, an individual whose identity is known
to the Grand Jury.

(Title 18, United States Code, Sections 371 and 3551 et
seq.)

13

## CRIMINAL FORFEITURE ALLEGATION

28. The United States hereby gives notice to the defendants charged in Counts One and Two herein, that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses, and all property traceable to such property, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offense.

29. If any of the above-described forfeitable property, as a result of any act or omission of any of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

14

United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeitable allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

15